443 A.2d 288

**COMMONWEALTH of Pennsylvania,**

v.

**Stephen TANUR, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed Oct. 16, 1981.

Reargument Denied April 13, 1982.

Paul R. Gettleman, Zelienople, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, JOHNSON and POPOVICH, JJ.

SPAETH, Judge:

This is an appeal from an order denying relief under the Post Conviction Hearing Act[1] without a hearing. The issues are whether the guilty plea colloquy was defective, and if so, whether appellant should be granted a new trial. The plea was entered as the result of a plea bargain. We find that the colloquy was defective. Because the record does not reveal whether the plea bargain was favorable and whether appellant understood and was satisfied to accept it rather than go to trial, we remand for an evidentiary hearing.

Appellant was charged with twenty counts of theft by deception,[2] twenty counts of passing bad checks,[3] one count of criminal conspiracy,[4] and one count of theft by receiving stolen property.[5] On March 16, 1977, he pleaded guilty to all counts except the one count of theft by receiving stolen goods, which was dismissed pursuant to a plea bargain. The lower court sentenced him to two concurrent five-year terms of probation and ordered him to pay the costs of prosecution. Appellant took no appeal from the judgment of sentence.

1.  19 P.S. § 1180–1 *et seq.*

2.  18 Pa.C.S.A. § 3922.

3.  18 Pa.C.S.A. § 4105.

4.  18 Pa.C.S.A. § 903.

5.  18 Pa.C.S.A. § 3925.

Appellant was subsequently found to be in violation of his probation and, on November 13, 1978, was sentenced to serve a term of eleven and one-half to twenty-three months imprisonment. Sometime later[6] appellant, filed a petition under the Post Conviction Hearing Act alleging that he had been denied his "constitutional right to representation by a competent lawyer," that his guilty plea had been unlawfully induced, and that he "was not fully advised of all the rights [he] would be giving up if [he] pled guilty." On November 8, 1979, the lower court denied appellant's petition, without a hearing, by an opinion and order that read in their entirety as follows:

AND NOW, to wit, this 8th day of November, 1979, it appearing to the Court that petitioner's Application for Post Conviction Relief is deficient on its face, that the issues therein raised are without merit, have been waived, and are not supported by the record, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT petitioner's Application for Post Conviction Relief is denied.

It is from this order that appellant appeals.

■ Appellant contends that the March 16, 1977, guilty plea colloquy was defective and that his former counsel was ineffective in failing to file a motion to withdraw the plea because of the defective colloquy. It is clear that the colloquy was defective, for appellant was not advised on the record of his right to a jury trial or his right to the presumption of innocence, as required by *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974) and Pa.R.Crim.P. 319(a).

■ When a defective guilty plea colloquy is attacked on direct appeal, we must reverse the conviction and award a new trial; we do not remand for an evidentiary hearing because, the defect appearing on the face of the record, a hearing would be superfluous:

In *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976), this court stated:

6. According to the briefs for appellant and the Commonwealth, appellant's petition was filed "sometime" in March 1979. The lower court record, however, indicates that it was filed on May 10, 1979.

"The Comments to Rule 319(a) of the Pennsylvania Rules of Criminal Procedure recommend that 'at a *minimum* the judge ask questions to elicit the following information:'

"(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

"(2) Is there a factual basis for the plea?

"(3) Does the defendant understand that he has the right to trial by jury?

"(4) *Does the defendant understand that he is presumed innocent until he is found guilty?*

"(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

"(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

"We reiterate here what was said in *Ingram*, [*Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974)] 455 Pa. at 204–205, 316 A.2d at 81: 'Adherence to [the guidelines set out in the Comments to Rule 319(a)] will serve to protect the rights of defendants while simultaneously facilitating appellate review.' *Failure to satisfy these minimal requirements will result in reversal. Commonwealth v. Schork*, 467 Pa. 248, 356 A.2d 355 (1976); *Commonwealth v. Miner*, 467 Pa. 230, 356 A.2d 346 (1976)." (Emphasis supplied.)

The above language makes clear that the above six questions are *mandatory* during a guilty plea colloquy and the failure to "satisfy these minimal requirements will result in reversal."

*Commonwealth v. Willis*, 471 Pa. 50, 50–52, 369 A.2d 1189, 1189–90 (1977) (emphasis in original).

*See also Commonwealth v. Reed*, 488 Pa. 221, 412 A.2d 477 (1980); *Commonwealth v. Ward*, 483 Pa. 53, 394 A.2d 535 (1978); *Commonwealth v. Tabb*, 477 Pa. 115, 383 A.2d 849 (1978); *Commonwealth v. Kulp*, 476 Pa. 358, 382 A.2d 1209 (1978); *Commonwealth v. Edwards*, 269 Pa.Super. 556, 410 A.2d 841 (1979). The question here, however, is whether

"failure to satisfy the [ ] minimal requirements" of *Commonwealth v. Ingram, supra,* and Rule 319(a) will also result in reversal when the defective colloquy is attacked not by petition to withdraw the plea and then on direct appeal, but rather collaterally, under the Post-Conviction Hearing Act, on a claim that prior counsel was ineffective in not attacking the defective colloquy.

Appellant argues that we should reverse and grant a new trial *whenever* the record discloses a defective guilty plea colloquy—that is, whether the defective colloquy is attacked on direct appeal or collaterally. As an original proposition, the argument has a certain appeal: since the defendant would have been permitted to withdraw his plea and go to trial if counsel had attacked the defective colloquy, either at the time of the plea or later by petition to withdraw and on direct appeal, why shouldn't counsel be declared ineffective *per se* for failing to attack the colloquy? However, in *Commonwealth v. Newell,* 486 Pa. 474, 406 A.2d 733 (1979), the Court seems to have rejected such a *per se* rule. In that case the defendant, charged with first degree murder, pleaded guilty to third degree murder after the Commonwealth agreed to accept that plea and to nol pros a related charge of theft. Several months after his sentence, the defendant collaterally attacked the colloquy as defective. In dissent, two Justices said that the colloquy was defective, and that the defendant should be permitted to withdraw his plea. Justice NIX said:

The issue presented is not whether appellant was aware of his right to appeal or whether or not he was satisfied with his sentence. The majority does not question the fact that the colloquy was constitutionally infirm. It is also not disputed that counsel failed to advise appellant of this inadequacy during the period of time that an appeal could have been timely filed. Regardless of how advantageous a negotiated plea may be, the decision to enter it and to waive the right to appeal is a decision of the client and not counsel. Moreover, the decision to waive the right of appeal in this case could only be a knowing one if

appellant had first been apprised of the constitutional deficiency in the colloquy and the legal effect of that deficiency. This did not occur and thus occasions my dissent.

Id., 486 Pa. at 478, 406 A.2d at 735.

Justice MANDERINO said that "the plea cannot have been said to be voluntarily, intelligently and knowingly made," since it did not explain the elements of the crime of third degree murder, and that "[c]ounsel was ineffective for failing to so advise" the defendant. Id. The other five Justices, however, rejected this per se rule and held that counsel would not be found ineffective because the record showed that the defendant had understood the plea bargain, had been satisfied with his sentence, and had chosen not to appeal.

Recently, we have filed two decisions consistent with Commonwealth v. Newell, supra. In Commonwealth v. Simpson, 290 Pa.Super. 11, 434 A.2d 103 (1981), the defendant pleaded guilty and received a sentence of probation, but later, when his probation was revoked and he was sentenced to prison, he collaterally attacked the guilty plea colloquy as defective. In fact the colloquy was defective. We nevertheless denied relief because at the PCHA hearing the defendant testified that even if counsel at the time of the plea had told him that the colloquy was defective, he would not have chosen to withdraw the plea and go to trial unless counsel had assured him that if convicted, he would still have received a sentence of probation. In Commonwealth v. Weiss, 289 Pa.Super. 9, 432 A.2d 1020 (1981), the facts were similar. There too the guilty plea colloquy was defective. We nevertheless held that counsel was not ineffective for failing to challenge it because counsel had negotiated a very favorable plea bargain, and a fair reading of the defendant's testimony at the PCHA hearing was that he understood the plea bargain and was satisfied to accept it rather than go to trial.[7]

7. We note that sometimes this court has awarded a new trial even though the guilty plea was entered into as a result of a plea bargain.

In the present case, in which no hearing has been held, the record does not permit us to make the sort of determinations made in *Newell, Simpson,* and *Weiss.*

We shall therefore reverse and remand for an evidentiary hearing at which the lower court can determine whether the plea bargain was favorable and whether appellant understood and was satisfied to accept it rather than go to trial. If the court determines that the bargain was favorable, and that appellant understood and was satisfied to accept it rather than go to trial, the conclusion will follow that counsel's failure to challenge the defective guilty plea colloquy had a reasonable basis designed to effectuate appellant's interests, with the result that appellant's petition should be denied. If, however, the court determines that the bargain was not favorable, and that had appellant understood that fact he would not have accepted it, then the conclusion will follow that counsel's failure to challenge the defective guilty plea colloquy was a failure to give appellant effective representation, with the result that appellant's petition should be granted.

The ORDER of the lower court is reversed and the case remanded for proceedings consistent with this opinion.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent. The majority remands the matter "[b]ecause the record does not reveal whether the plea bargain was favorable and whether appellant understood and was satisfied to accept it rather than go to trial." At 289. I cannot agree. The clear import of the majority's decision is to demand a *perfect* record in every ineffectiveness case even though there is *evidence* that counsel's actions had a reasonable basis.

See, e.g., *Commonwealth v. Morris,* 271 Pa.Super. 362, 413 A.2d 708 (1979); *Commonwealth v. Manning,* 263 Pa.Super. 430, 398 A.2d 212 (1979). However, those cases did not consider whether counsel might have had a reasonable basis for not objecting to the colloquy in that the defendant understood the bargain and preferred to accept it rather than go to trial.

First of all, this writer cannot agree that in the instant case because no post-conviction hearing was held, the record is inadequate. In fact, oddly enough *Commonwealth v. Weiss*, 289 Pa.Super. 9, 432 A.2d 1020 (1981), the case which the majority cites for support offers some insight into why the claim of ineffectiveness can be resolved without a remand. In *Weiss*, the guilty plea colloquy was defective, and counsel failed to object to the plea. This Court said that "[h]ad an objection been registered, the plea *may have been invalidated and appellant could have faced* much stiffer sentencing at trial." *Commonwealth v. Weiss*, 289 Pa.Super. at 7, 432 A.2d at 1023 (emphasis added). So, too, in the instant case, this writer hardly can conceive of a clearer case where "had an objection been registered, the plea may have been invalidated and appellant could have faced much stiffer sentencing at trial." *Id.* By concluding that enough is not known about the facts of the case before us, the majority is reading the record with a set of judicial blinders.

At the guilty plea hearing, representatives of the complainant, a banking institution, "recommended a term of probation *to be determined by the court*". (N.T. 3/16/77 at 10) (Emphasis added). The other relevant portions of the colloquy are the following:

"THE COURT: And do you realize you could receive a maximum period of probation up to five years?

APPELLANT: Yes, I do.

THE COURT: *And that the meaning of a probationary period of up to five years, if you were fortunate enough to receive that,* that you could be sentenced to jail for that period if you violated the terms of the probation?

APPELLANT: Yes, I do, Your Honor.

THE COURT: And understanding that, do you still wish to enter a plea of guilty to each of these charges?

APPELLANT: Yes, I do.

THE COURT: Is there anything further to be presented here?

[DEFENSE COUNSEL]

MR. WEISS: I would like to make a statement before you pass sentence, Your Honor.

I think it is quite relevant here, first of all, at the time of these offenses Mr. Tanur—

THE COURT: Move your microphone over.

MR. WEISS: At the time of these offenses, Your Honor, Mr. Tanur did, and will admit to, having had a drug problem. That problem has since cleared up. He realizes what he did and he realizes he made a mistake, and he is willing to pay for that mistake. I think it is also relevant to note his father, during the whole process, has stood behind him and, as the gentlemen from the banks testified, has agreed to make restitution in the hope his son will pay him back, obviously, but he does have a family to go to.

I also believe he has a job to go to, and *I believe these should all be taken into consideration when passing sentence, Your Honor.*

THE COURT: All right. Is there anything else?

[THE PROSECUTION]

MR. GARGER: No, Your Honor, we have nothing further.

THE COURT: *Now, the plea bargain in this case, it was the recommendation he would receive, in view of the fact restitution had been made in full, that he would receive a probation to be determined by the Court, of course, contemplating the court costs to be fixed by the Court, too.*

*        *        *        *        *        *

THE COURT: Is there anything you wish to say at this point?

THE DEFENDANT: Your Honor, when I did it, I was wrong. I just want to go back to work and live a constructive life.

THE COURT: All I want to say to you is: Your father, who sat quietly by, impresses me as a sort of a decent human being. *You almost talked yourself into jail the other day on a probation violation. Do you remember that?*

THE DEFENDANT: Yes, sir, I do.

THE COURT: *Well, that is as close as you will ever come to it happening, because the next time if we have any problems with you, you are going.*

On this Criminal Information at 7608818A, upon which the Defendant has this day entered a plea of guilty before this Court to twenty-three counts altogether, eleven counts of passing bad checks, eleven counts related and including theft by deception, and a 23rd count of criminal conspiracy on that Indictment, the sentence of the Court is that you pay the costs of prosecution on these cases, that you do so at the rate of $25 per month until the costs are paid, that you be placed on probation for a period of five years. A condition of that probation is that you will remain drug-free, that you will not violate the laws of this Commonwealth with any worthless checks such as you have engaged in here; and in the alternative, if you do violate the terms of your probation, then you will have to undergo incarceration for a period of not less than two and a half nor more than five years.

Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: *You are getting a five-year probation. Now, I want you to know that we mean business.* That is on that Indictment. On the other Indictment at 7608698A, the sentence of the Court is: On the nine counts of theft by deception and nine counts of bad checks, the sentence of the Court will run concurrent with the sentence imposed; that is, the costs of prosecution must be paid by you, and you will undergo a five-year probation.

Now, do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: *If you violate it, we are going to see you again, and if you do you are in trouble, so you had better straighten up, shape up or ship out, because that is the next trip. And if you come here again, don't bring your*

*Dad along because he could be spared what will happen to you.*

Now, you have a right to appeal judgment of the sentence of this Court to a higher court within a period of thirty days. If you are indigent and wish to take an appeal, the Court will appoint counsel free of charge to represent you in connection with any appeal you desire to take.

Do you understand you have that right?

THE DEFENDANT: Yes, sir, I do."

(N.T. 3/16/77, at 10–11, 16–20) (emphasis added).

From the above excerpted portions of the colloquy *and* from the fact that appellant could have received a sentence of approximately forty-one years in prison and fined $96,000, trial counsel had a reasonable basis for not objecting to the defective colloquy.[1]  Cf. *Commonwealth v. Johnson*, 489 Pa.

1.  These figures were reached according to the following guidelines:
    Passing bad checks is a summary offense where the amount involved does not exceed $200.00, 18 Pa.C.S.A. § 4105(c) (1973). The sentence for a summary offense should not be more than 90 days imprisonment, and any fines imposed should not be more than $300.00. 18 Pa.C.S.A. § 1105 (1973) and § 1101(6) (Supp.1980–81). In this case, the trial court properly noted that each of the twenty bad checks constituted a separate offense under the law. See 18 Pa.C.S.A. § 4105. Each check involved did not exceed $200.00. Therefore, appellant could have received a total sentence of approximately five years imprisonment and a maximum fine of $6,000.00 for the twenty counts of passing bad checks.
    With respect to the twenty theft by deception counts, a court could consider each of the theft charges separately. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1 eff. June 6, 1973, 18 Pa.C.S.A. § 3903(a) (1973) and § 3903(b) (Supp.1980--81). Under this method, fourteen of the theft by deception charges would be misdemeanors of the second degree because the amounts of fourteen of the checks ranged from $50.00 to less than $200.00. 18 Pa.C.S.A. §§ 3903(b)(1) and (c)(2)(i) (Supp.1980–81). The possible sentence for a misdemeanor of the second degree is to be not more than two years imprisonment, and any fine should not be more than $5,000. 18 Pa.C.S.A. § 1104(2) (1973) and § 1101(4) (Supp.1980--81). The six remaining counts of theft by deception involve amounts less than $50.00 and would be classified as misdemeanors of the third degree. 18 Pa.C.S.A. § 3903(b)(2) and (c)(2)(i) (Supp.1980–81). The possible sentence for a misdemeanor of the third degree is not more than one year imprisonment and not more than $2,500 in fines. 18 Pa.C.S.A. § 1104(3) (1973) and § 1101(3) (Supp.1980–81). For the twenty theft by deception counts, appellant could have received a 34 year

129, 133 n. 4, 413 A.2d 1047, 1049, 1050 n. 4. (The Court may look to extrinsic facts). One need not be a legal scholar to determine that the trial court was a split second away from imposing a more severe sentence when he said "Well, that is as close as you will ever come to it [jail] happening, because the next time if we have any problems with you [the appellant], you are going." (N.T. 3/16/77 at 18). I submit, that under these circumstances, defense counsel would have been *ineffective* had he interposed an objection during or after the court's colloquy.

The situation which trial counsel faced in the instant case is similar to the one that was presented in *Commonwealth v. Brightwell*, 492 Pa. 424, 424 A.2d 1263 (1981). In *Brightwell*, the jury returned inconsistent verdicts of murder of the third degree and voluntary manslaughter. Defense counsel, rather than request that the jury reconsider its decision, did not object to the trial court's determination that the verdict be recorded as guilty of murder of the third degree. Our Supreme Court decided that since "the trial court *could have* ordered the jury to redeliberate on all possible counts of homicide [, a]lthough counsel could have asked that the jury be ordered to redeliberate on only murder of the third degree and voluntary manslaughter," *id.,* 492 Pa. at 427, 424

imprisonment term, and fines could have totaled not more than $85,000.

On the one count of criminal conspiracy of theft by deception and passing bad checks, appellant would have been sentenced on the same grade and degree as the most serious offense which was the object of the conspiracy. 18 Pa.C.S.A. § 905(a) (Supp.1980–81). In this case, the most serious offense would have been the theft by deception charge which was a misdemeanor of the second degree. 18 Pa.C.S.A. § 3903(a) (1973) and 3903(b) (Supp.1980–81). As mentioned above, the sentence for a misdemeanor of the second degree is no more than two years in prison, and any fine imposed cannot exceed $5,000.

Of course, a court *may* aggregate the theft by deception counts if the court found that the "thefts [were] committed pursuant to one scheme or course of conduct, whether from the same person or several persons". 18 Pa.C.S.A. § 3903(c)(3) (Supp.1980–81).

Under the aggregate method, the possible sentence would have been less than the sentence calculated above. See 18 Pa.C.S.A. §§ 3903(a) (1973), 3903(b) (Supp.1980–81), 1101(3) (Supp.1980–81) and 1104(1) (1973).

A.2d at 1265 (emphasis added), counsel had a reasonable basis for not objecting. That is, counsel " 'didn't want to give the jury another opportunity to go out and come back with first degree murder.' " *Id.*

Similarly, in the case before us, had the guilty plea been vacated, the trial court would have had another "opportunity" to redeliberate and impose a stiffer sentence.

With respect to whether or not this Court should remand for an evidentiary hearing to establish if counsel's actions were reasonable, we have said that:

"[s]uch a procedure is not necessary, however, if from the *record it is apparent* that the action claimed to constitute ineffectiveness was in fact within the realm of trial tactics or strategy." *Commonwealth v. Roberts*, 263 Pa.Super. 237, 243, 397 A.2d 1187, 1190 (1978) allocatur denied April 16, 1979. (emphasis added).

This writer considers the failure by counsel to object to have been a decision which was borne "within the realm of trial tactics or strategy". After the defective colloquy occurred, counsel's client was "fortunate enough to receive" (N.T. 3/16/77 at 10) concurrent probationary periods of five years. By not moving to challenge the defective guilty colloquy, counsel exercised a trial strategy which had the effect of leaving his client's "fortunate" sentence undisturbed. This writer cannot characterize such a trial strategy as ineffective because "the *record* supports a conclusion that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest." *Commonwealth v. Musi*, 486 Pa. 102, 107, 404 A.2d 378, 380 (1979) (citations omitted) (emphasis added). Indeed, from these facts, counsel probably was "happily" effective at the end of the hearing.

To reiterate, the record is replete with testimony from which this Court could infer that trial counsel's strategy in not objecting had a reasonable basis, his client having received probation without the imposition of any fines, a much lighter sentence than the one appellant could have received. Cf. *Commonwealth v. Zakrzewski*, 460 Pa. 528, 333 A.2d 898

(1975) (where defense counsel's conclusion that it was in the defendant's best interests to plead guilty was reasonable under the circumstances). Because the majority remands unnecessarily for an evidentiary hearing for counsel to explain what is already evident on the face of this record, I must register my dissent.